# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2013

Lyle W. Cayce
Clerk

No. 12-50929
Summary Calendar

STEVEN T. WALTNER; SARAH V. WALTNER,

Plaintiffs–Appellants,

v.

AURORA LOAN SERVICES, L.L.C.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED; CODILIS & STAWIARSKI, P.C.; FEDERAL HOME LOAN MORTGAGE CORPORATION,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CV-502

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants Steven and Sarah Waltner (the Waltners) brought this action following foreclosure on their Texas home. The Waltners appeal the district court's grant of judgment as a matter of law on their promissory estoppel claim in favor of Defendants–Appellees Aurora Loan Services, L.L.C. (Aurora) and Federal Home Loan Mortgage Corporation (FHLMC). They also

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50929

appeal various discovery and evidentiary rulings and pre-trial orders, including the district court's dismissal of their constitutional challenges and wrongful foreclosure claim against Aurora, FHLMC, and Defendants–Appellees Mortgage Electronic Registration Systems, Incorporated (MERS) and Codilis & Stawiarski, P.C. (C&S).   We affirm the district court's judgments.

**I**

The undisputed facts are as follows.  In 2006, the Waltners purchased a home in Georgetown, Texas with a mortgage from Aegis Wholesale Corporation (Aegis).  MERS was listed as the beneficiary on the Deed of Trust. In April 2008, the Waltners encountered financial hardship and sought a loan modification from Aurora, which had become their loan servicer.  While modification discussions were still ongoing, the Waltners received a notice of default from Aurora in September 2008.

The Waltners subsequently entered into negotiations directly with FHLMC, which was authorized to work with the Waltners in modifying their loan.  In January 2009, the Waltners reached an oral agreement to modify the loan to a 447-month fixed-rate loan at an interest rate of 4.375 percent and first payment due April 1, 2009.  However, in April 2009, the loan modification documents received by the Waltners indicated a modification to a 447-month fixed-rate loan at 4.5 percent annual interest with first payment due June 1, 2009.  The Waltners rejected the proposed modification as not reflecting the earlier oral agreement.  The property was foreclosed on and sold to FHLMC on June 2, 2009.

The Waltners then brought this action against Aurora and FHLMC for promissory estoppel and against all defendants for a declaratory judgment of wrongful foreclosure.  The complaint also sought a declaratory judgment that

2

No. 12-50929

sections 51.0001(4)(B) and 51.0075(c) of the Texas Property Code are unconstitutional.

The defendants were served on October 31 and November 1, 2011. On November 22, 2011, C&S moved to dismiss for failure to state a claim. On November 30, 2011, Aurora and MERS filed similar motions to dismiss. On December 5, 2011, the Waltners moved for entry of default and default judgment against all defendants under Federal Rule of Civil Procedure 55. The Clerk of the Court entered default against FHLMC the following day. However, the district court subsequently vacated the entry of default against FHLMC and denied the Waltners' motions for entry of default and default judgment. The district court then ruled on the defendants' motions to dismiss, including FHLMC's motion filed December 22, 2011, and granted the motions of C&S and MERS in their entirety, and the motions of Aurora and FHLMC in part, leaving only the Waltners' promissory estoppel claim.[1]

The parties subsequently engaged in contentious discovery, resulting in motions by the Waltners to compel production, to strike discovery responses, and for sanctions. The district court granted in part and denied in part the Waltners' motions to compel, denied their motion to strike the responses of Aurora and FHLMC, granted the motion by Aurora and FHLMC to amend their responses, and carried the Waltners' motion for sanctions until the end of trial. Both sides also filed motions for summary judgment, which the district court declined to decide.

At trial, the Waltners called only themselves as witnesses. During the course of their testimony, they sought to admit various documents, including

---

[1] In the same order, the district court also denied the Waltners' objection and motion for reconsideration of the district court's order denying entry of default and default judgment against the defendants and the Waltners' objections and motions to strike the defendants' motions to dismiss.

3

No. 12-50929

a "call sheet" of notes taken by Sarah Waltner during telephone conversations with representatives of FHLMC, a Consolidated Notes Log related to the Waltners' loan, a Loss Mitigation Document Order Form sent from Aurora to attorney Ruth Ruhl, and a series of e-mails between Ruhl and Aurora, which the district court excluded as hearsay. At the close of the Waltners' case, Aurora and FHLMC moved for judgment as a matter of law under Rule 50(a), which the district court granted. This appeal followed.

## II

The Waltners first challenge the district court's order denying their motion for entry of default and default judgment against the defendants. The district court held that the Waltners were not entitled to an entry of default or default judgment against Aurora, MERS, or C&S because those defendants had filed motions to dismiss prior to the entry of any default judgment, and thus were not in default. With respect to FHLMC, the district court held that it was not in default because it was a federal institution that had sixty days to answer rather than twenty-one. In its order denying the Waltners' motion for reconsideration, the district court also held that even if the untimeliness of the motions of Aurora, MERS, and C&S did not preclude entry of default, the district court would still not enter default or a default judgment against them because the Waltners had failed to show prejudice from the delay. Similarly, the district court held that even if FHLMC was not a United States agency, it would not enter default judgment against FHLMC for the same reason.

We review the district court's denial of the Waltners' motion for entry of default and default judgment against the defendants for abuse of discretion.[2] "[A] party is not entitled to a default judgment as a matter of right, even where

---

[2] *Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000).

the defendant is technically in default."[3] Moreover, "default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[4] Indeed, we have held that when the plaintiff has made no showing of prejudice stemming from the defendant's delay, a default judgment "should not be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement."[5]

The Waltners do not argue that they were prejudiced by the defendants' delays. Instead, they assert that a showing of prejudice is not required for an entry of default or default judgment. In regard to FHLMC in particular, they also argue that FHLMC was required to make a showing of good cause in order to have the clerk's entry of default set aside.

First, although a showing of good cause is required under Rule 55(c) to set aside an entry of default, an entry of default against a defendant does not automatically entitle the plaintiff to a default judgment because the decision whether to grant a default judgment remains in the discretion of the district court.[6] Second, while the Waltners are correct that a showing of prejudice is not *required* for an entry of default or default judgment, the district court may still consider the absence of prejudice to the plaintiff in deciding whether to exercise its discretion to grant a default judgment.[7] Given the lack of prejudice to the Waltners from the defendants' delays, we hold that the district court did

---

[3] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (internal quotation marks omitted).

[4] *Id* (internal quotation marks omitted).

[5] *Mason & Hanger-Silas Mason Co. v. Metal Trades Council of Amarillo, Tex. & Vicinity, AFL-CIO*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).

[6] FED. R. CIV. P. 55(b)(2); *see also Jefferson v. La. Dept. of Pub. Safety & Corr.*, 401 F. App'x 927, 929 (5th Cir. 2010) (per curiam) (unpublished) ("Entering a judgment based on the default is at the discretion of the court, which means [plaintiff] was not entitled to a default judgment simply because of the earlier entry of a default.").

[7] *Mason*, 726 F.2d at 168; *see also* FED. R. CIV. P. 55(b)(2).

No. 12-50929

not abuse its discretion in denying the Waltners' motion for entry of default and default judgment against the defendants.[8]

### III

The Waltners' next contend that the district court erred in granting Aurora and FHLMC judgment as a matter of law under Rule 50(a) on the Waltners' promissory estoppel claim.  "We review the district court's grant of judgment as a matter of law de novo, applying the same legal standards as the district court."[9]  Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[10]  In reviewing the district court's grant of judgment as a matter of law, we "consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury."[11]

Under Texas law, a plaintiff must prove four elements in order to prevail on a claim of promissory estoppel: "(1) a promise (2) that the promisor should have expected would lead the promisee to some definite and substantial injury, (3) that such an injury occurred, and (4) that injustice may be remedied only

---

[8] Because we uphold the district court's denial on the district court's alternative ground—that it would have denied the Waltners' motion for default judgment against the defendants due to the lack of prejudice to the Waltners even if Aurora, MERS, and C&S were in default and FHLMC was not a United States agency for purposes of service of process— we do not address whether the district court erred in holding that Aurora, MERS, and C&S were not in default and that FHLMC is a United States agency for purposes of service of process.

[9] *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 474 (5th Cir. 2012).

[10] FED. R. CIV. P. 50(a).

[11] *Gonzalez*, 689 F.3d at 474-75 (internal quotation marks omitted).

by enforcing the promise."[12]   Damages on a promissory estoppel claim are limited to reliance damages.[13]   In granting judgment as a matter of law, the district court held that the Waltners had not provided "any evidence of any measure of damages within . . . Texas law for [their] cause of action in the record which would allow the jury to do anything but speculate."  We agree.

Reliance damages cover "expenditures made in preparation for performance or in performance," and essentially seek to restore the status quo by putting the injured party in the "position . . . he would have been [in] had the contract not been formed."[14]  They differ from expectation damages, which seek to give the injured party the benefit of the bargain by putting him in the position he would have been in had the contract as promised been performed.[15] At trial, the evidence presented by the Waltners on damages related to the lost use of the property, both as a rental property and a personal use property, loss of equity in the house, increase in the loan balance, and negative impact on the Waltners' credit.  These are not reliance damages.

First, none is an expenditure in preparation for performance or in performance of the alleged promised loan modification.  To the extent that the Waltners' argument is that they rejected the loan modification offered in April 2009 in reliance on the earlier promised modification, their reliance was not reasonable—and thus any resulting damages unrecoverable—because they knew at that point that Aurora and FHLMC did not intend to perform under

---

[12] *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 295 (5th Cir. 2010) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).

[13] *Fretz Constr. Co. v. S. Nat. Bank of Hous.*, 626 S.W.2d 478, 483 (Tex. 1981); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[I]n a claim for promissory estoppel, only reliance damages are allowed.").

[14] *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 926 (Tex. App.—Austin 2008, no pet.).

[15] *Id.* at 927.

No. 12-50929

the original agreement.[16]  Second, the Waltners offered no explanation as to how they would have avoided these consequences had there been no promise of a forthcoming loan modification.  Absent the promise to modify their loan, the Waltners would still have been in default, and there was no evidence at trial as to any action the Waltners would have taken to avoid the various negative consequences they asserted had they not received the promise to modify their loan.  Thus, as the district court held, any award of damages by the jury would be based on pure speculation.

The damages claimed by the Waltners, which resulted from their continued default and the ultimate foreclosure on the property, are instead consequential losses caused by the failure of Aurora and FHLMC to perform as promised.  However, consequential losses are a form of expectation damages and are not recoverable on a claim of promissory estoppel.[17]  Accordingly, we hold that, on the record before us, Aurora and FHLMC were entitled to judgment as a matter of law.

## IV

Related to the Waltners' argument that the district court erred in granting Aurora and FHLMC judgment as a matter of law are challenges to the district court's denial of the Waltners' motion for summary judgment and to the court's discovery and evidentiary rulings.  With respect to the Waltners' motion for summary judgment, "[o]nce trial began, the summary judgment motion[] effectively became moot."[18]  "Because a trial followed the denial of

---

[16] *See Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 436 (5th Cir. 2001) (holding that there could be no reasonable reliance on original contract following its repudiation).

[17] *Bechtel Corp.*, 271 S.W.3d at 928 ("Such [consequential] damages are in the nature of expectancy damages: they place [plaintiff] in the position it claims it would have been had the promises been kept. Such damages are not recoverable through promissory estoppel.").

[18] *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 n.9 (5th Cir. 1984).

summary judgment, we lack jurisdiction to consider the denial of summary judgment."[19] We review the district court's discovery and evidentiary rulings for abuse of discretion.[20] "Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable."[21] We "will reverse a judgment on the basis of an evidentiary ruling only where the challenged ruling affects a substantial right of a party."[22]

**A**

The Waltners challenge the district court's grant of the motion by Aurora and FHLMC to amend their responses and concurrent denial of the Waltners' motions to strike the defendants' deficient discovery responses, and the district court's failure to consider the Waltners' motion for sanctions, including its refusal to deem the unsigned discovery responses of Aurora and FHLMC to the Waltners' requests for admissions as admitted by operation of law. However, while the Waltners assert that these discovery rulings allowed the "dilatory tactics" of Aurora and FHLMC to go largely unchecked and left the Waltners with inadequate discovery, they make no specific arguments as to the arbitrary nature or clear unreasonableness of any of the district court's individual discovery rulings. Accordingly, these claims are waived for inadequate briefing.[23]

Even if the Waltners' challenges to the district court's discovery rulings were not waived, a review of the district court's decisions indicates that they

---

[19] *Brown v. Slenker*, 220 F.3d 411, 421 n.9 (5th Cir. 2000).

[20] *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 927 (5th Cir. 2006).

[21] *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

[22] *Washington v. Dep't of Transp.*, 8 F.3d 296, 299 (5th Cir. 1993).

[23] *See Young v. Repine (In re Repine)*, 536 F.3d 512, 518 n.5 (5th Cir. 2008).

were neither arbitrary nor clearly unreasonable. The grounds for the Waltners' motion to strike the defendants' discovery responses were that they were unsigned and/or unsworn. While Federal Rule of Civil Procedure 26(g)(2) provides that the court "must strike" unsigned discovery responses "unless a signature is promptly supplied after the omission is called to the attorney's or party's attention,"[24] the district court found that Aurora and FHLMC had "promptly corrected [the technical deficiencies] when the matter was brought to their attention." Additionally, the district court found that the Waltners had suffered no prejudice from the technical deficiencies in the discovery responses. Denying the Waltners' motion to strike the technically deficient responses of Aurora and FHLMC and allowing them to amend their responses to correct those deficiencies, which did not prejudice the Waltners, is neither arbitrary nor clearly unreasonable, and is not an abuse of discretion.[25]

Relatedly, the Waltners' challenge to the district court's decision not to deem admitted the deficient discovery responses of Aurora and FHLMC also fails. The Waltners argue that the responses should have been deemed admitted under Federal Rules of Civil Procedure 36(a) and 37(a)(4).[26] However, Rule 36(b) provides that a matter deemed admitted under subsection (a) is not established if the court permits the admission to be amended, which it may do if it "would promote the presentation of the merits" and if "it would [not] prejudice the requesting party in maintaining or defending the action on

---

[24] FED. R. CIV. P. 26(g)(2).

[25] *See Coco v. United States*, 569 F.2d 367, 372 (5th Cir. 1978) (holding that district court did not abuse its discretion in denying a motion to strike when movant failed to show prejudice).

[26] *See* FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); FED. R. CIV. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

the merits."[27]   Because the district court properly permitted Aurora and FHLMC to amend their discovery responses, the responses are not admitted under Rule 36(a) and the district court did not abuse its discretion in not deeming their responses admitted and declining to rule on the Waltners' motion for sanctions until the end of the case.

## B

The Waltners' evidentiary challenges are myriad.   They contest the exclusion as hearsay of Sarah Waltner's "call sheet," the Consolidated Notes Log, the Loss Mitigation Document Order Form, and a series of e-mails between Ruhl and Aurora.   They also challenge the admission of defense exhibits of the Note on the Waltners' loan and the Deed of Trust.   However, none of this evidence goes to the Waltners' failure to show reliance damages. Thus, even if the district court abused its discretion in excluding the Waltners' various exhibits and in admitting the defendants' exhibits, Aurora and FHLMC would still be entitled to judgment as a matter of law because the Waltners failed to establish any reliance damages from the non-performance of the defendants' promise.   Therefore, we hold that the Waltners are not entitled to reversal of the judgment against them on the basis of any of the challenged evidentiary rulings.

## V

The Waltners additionally contest the district court's dismissal of their constitutional challenges to sections 51.0001(4)(B) and 51.0075(c) of the Texas Property Code as well as their wrongful foreclosure claim.   We review the district court's grant of a motion to dismiss de novo.[28]   We will "affirm the district court's grant of a motion to dismiss 'when the plaintiff has not alleged

---

[27] FED. R. CIV. P. 36(b).

[28] *Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013).

11

enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[29]

With regard to their constitutional challenge, the Waltners cite no legal authority for the proposition that sections 51.0001(4)(B) and 51.0075(c) are unconstitutional and assert simply that they are "obnoxious to the Texas and U.S. Constitutions." They do not identify the constitutional provisions that sections 51.0001(4)(B) and 51.0075(c) allegedly violate or explain how their complaint adequately stated plausible claims regarding such violations. Given the lack of argument on this issue, it is waived.[30]

With respect to the Waltners' dismissed wrongful foreclosure claim, Texas law requires that a plaintiff bringing a wrongful foreclosure claim show that there was (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price.[31] The latter two elements need not be shown if the borrower instead establishes that the lender deliberately chilled the bidding at the foreclosure sale.[32]

The Waltners' complaint fails to allege facts supporting either a grossly inadequate selling price or the deliberate chilling of bidding at the foreclosure sale. Instead, the Waltners' claim is that the defendants proceeded with the foreclosure sale without authority and on the basis of various

---

[29] *Id*. at 330 (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).

[30] *See Young v. Repine (In re Repine)*, 536 F.3d 512, 518 n.5 (5th Cir. 2008).

[31] *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.).

[32] *Id*. at 727; *Charter Nat'l Bank—Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

No. 12-50929

misrepresentations.  As the district court correctly recognized, while such facts, if established as true, might provide the basis for a meritorious breach of a contract claim, they do not state a claim for wrongful foreclosure. Accordingly, the district court did not err in dismissing the Waltners' wrongful foreclosure claim.

*     *     *

For the foregoing reasons, the judgments of the district court are AFFIRMED.